# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ENVIRONMENTAL CONSTRUCTION SERVICES, INC., *et al.* | : | CIVIL ACTION |
| | : | |
| | : | NO. 19-3477 |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| DOMINIC MENTA, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                          APRIL 13, 2022

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiffs Environmental Construction Services, Inc. ("ECSI360"), Element Mechanical Services LLC, and Limbach360, LLC—three related entities in the business of providing full-service construction and engineering services in the HVAC industry (collectively, "Plaintiffs")—filed this civil action against Defendants Dominic Menta, Environmental Control Services, Inc., and ECSI II, Inc. (collectively, "Defendants"), alleging, *inter alia*, violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Lanham Act, 15 U.S.C. § 1125, as well as state law claims for tortious interference with prospective contracts.[1]  In response to Plaintiffs' complaint, Dominic Menta, Environmental Control Solutions, Inc., and ESCI II, Inc., asserted a number of counterclaims and third-party claims against Michael

---

[1]     Plaintiffs also assert claims for breach of fiduciary duty (Count III) and conversion (Count VII) against Menta, on which Defendants have not moved for summary judgment.  In addition, Plaintiffs assert claims against Defendants for violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*, (Count V) and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat. § 5301 (Count VI). However, in their response to Defendants' underlying motion, Plaintiffs concede that these claims "lack sufficient support to survive summary judgment."  (Pls. Opp., ECF 104, at p. 1 n.1).  Accordingly, summary judgment is granted with respect to Counts V and VI of the complaint.

Brown and ECSI360 premised on purported loans that these parties made to Brown and ECSI360 that have not been repaid.

Before this Court is Defendants' motion for partial summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, in which Defendants seek judgment with respect to Plaintiffs' RICO, Lanham Act, and state law tortious interference claims.  Defendants also seek summary judgment with respect to their own counterclaims and third-party claims for breach of contract.  [ECF 99].  Plaintiffs oppose the motion.  [ECF 104].  The issues raised by the parties have been fully briefed and are ripe for disposition.[2]  For the reasons set forth herein, Defendants' motion is granted with respect to Plaintiffs' RICO, Lanham Act, and tortious interference claims, and denied with respect to Defendants' counterclaims and third-party breach of contract claims.

## BACKGROUND

In their operative complaint, Plaintiffs assert numerous claims against Defendants, all premised upon Defendants' various participation in an alleged scheme to divert business opportunities and existing business away from Plaintiffs and toward Defendants.  Following the completion of discovery, Defendants filed the instant partial motion for summary judgment, arguing, *inter alia*, that Plaintiffs have failed to proffer sufficient evidence to meet their summary judgment burdens on their RICO, Lanham Act, and tortious interference claims.  Plaintiffs disagree.

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant—here, Plaintiffs.  *See*

---

[2]      This Court has also considered Defendant' reply.  [ECF 112].

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  The facts relevant to the underlying motions are summarized as follows: [3]

      Plaintiff ECSI360 is a full-service construction and engineering firm in the HVAC industry formed in July 2010 by Michael Brown ("Brown") and Defendant Dominic Menta ("Menta").  Brown is the majority owner of ECSI360; Menta is the minority owner.  Brown serves as ECSI360's President and Chief Executive Officer, and Menta serves as its Vice President and Secretary.  Plaintiffs Element Mechanical Services LLC ("Element") and Limbach360, LLC ("Limbach360") are wholly owned subsidiaries of ECSI360.

      Because it is majority-owned by Brown, a businessman of African American and Spanish descent, ECSI360 is a certified minority business enterprise ("MBE").  ECSI360s's MBE status provides ECSI360 unique opportunities to bid on certain government work that is only available to MBEs.

      Menta also wholly owns two other companies—Defendants Environmental Control Services, Inc., and ECSI II, Inc., (collectively, "Environmental Control Services").  Environmental Control Services offers air duct cleaning and sealing, air pollution control, dust collection, air filtration, industrial ventilation, and odor control services.  Prior to incorporating ECSI360, Brown knew that Menta operated these other companies in the HVAC business and that Menta would continue to operate those businesses.  Brown also understood that Menta and the companies that he alone owned and operated were not prohibited from bidding on all projects for which they alone were solicited or projects that fell within their particular areas of expertise without necessarily including ECSI360.

      In the summer of 2019, Brown purportedly discovered that Menta had been exploiting various aspects and resources of ECSI360 to advance his own financial interests and those of his other companies. [4]  Based on this purported discovery, Brown commenced this action.

---

[3]      These facts are taken from the parties' briefs, exhibits, and statements of facts.  To the extent that any facts are disputed, such disputes will be noted and, if material, will be construed in Plaintiffs' favor pursuant to Rule 56.

[4]      Though Plaintiffs, of course, bear the burden of presenting evidence sufficient to substantiate their factual allegations, Plaintiffs' brief is bereft of citations to record evidence to support many of their otherwise bald contentions of wrongful exploitation.  (*See, e.g.*, Pls. Opp., ECF 104, at p. 7).  Plaintiffs' evidence, or lack thereof, is discussed in greater detail in this opinion.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice.  Fed. R. Civ. P. 56.  Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id.* at 322.   After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P 56(c)(1)(A)–(B).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co.*

*of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

As noted, Defendants seek summary judgment with respect to Plaintiffs' RICO, Lanham Act, and tortious interference claims. Each of these claims is addressed below.

### *Plaintiffs' RICO Claim (Count I) Against Defendant Menta*

At Count I of the amended complaint, Plaintiffs allege that Defendant Menta is liable under 18 U.S.C. § 1962(c) of RICO for alleged violations of the federal wire fraud statute, 18 U.S.C. § 1343, on account of his alleged wrongful use of ECSI360 and Limbach360, to divert work away from Plaintiffs and to Defendants. In the motion for summary judgment, Menta argues that Plaintiffs have failed to present evidence sufficient to meet their summary judgment burden with respect to, *inter alia*, the requisite financial loss required for a RICO claim. Specifically, Menta argues that Plaintiffs have failed to present evidence sufficient to show that Menta's alleged conduct was the proximate cause of any damages suffered by Plaintiffs, *i.e.*, the diverted business. After a thorough review of the evidentiary record, this Court agrees with Menta.

Section 1962(c) of RICO prohibits "any person . . . associated with any enterprise engaged in . . . interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To prevail under § 1962(c), a plaintiff must demonstrate: (1) "the existence of an enterprise affecting interstate commerce," (2) "that the defendant was employed by or associated with the enterprise," (3) "that the defendant participated, either directly or indirectly, in the conduct

of the affairs of the enterprise," and (4) that the defendant's participation involved a "pattern of racketeering activity." *Bailey v. Reed*, 29 F. App'x 874, 875 (3d Cir. 2002). In addition, a plaintiff must show that it suffered injury, *i.e.*, financial loss, to its business or property proximately caused by the defendant's violation of § 1962. *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000); *Kolar v. Preferred Real Estate Inv., Inc.*, 361 F. App'x 354, 362 (3d Cir. 2010). The United States Supreme Court has stated that a RICO "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation [of RICO]." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The requisite "showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483 (citation omitted). In addition, a "plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (citations omitted). In the RICO context, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged. A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.* (alteration in original) (citations omitted).

As described above, Plaintiffs' RICO claims are premised on their contention that Menta diverted various jobs away from Plaintiffs and to his own businesses. Menta argues that Plaintiffs have presented no evidence that they would have received this work in the absence of Menta's alleged conduct. Further, he argues that the absence of any such evidence precludes Plaintiffs from showing that their injury, *i.e.*loss of business, was caused by Menta's conduct. This Court agrees.

In response to Menta's argument that Plaintiffs lack evidence to support their purported financial losses, Plaintiffs contend that "Brown and ECSI360's controller, Louis Tierno, **are**

***prepared to testify*** as to ECSI360's standard profit margins and substantiate the revenues Plaintiffs

lost due to Menta's scheme." (Pls. Opp., ECF 104, at p. 12) (emphasis added). Notably, Plaintiffs

do not provide any affidavits or point to any record evidence to support this future testimony.

Merely proffering witnesses who "are prepared to testify" as to Plaintiffs' losses—an essential

element of Plaintiffs' RICO claim—is patently insufficient to defeat a summary judgment motion.

At this stage, Plaintiffs bear the burden of presenting evidence sufficient for a reasonable factfinder

to find in their favor as to each element of their claims. *Wilborn v. Bar*, 401 F. Supp. 3d 501, 505

(E.D. Pa. 2019) ("[T]he non-moving party must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue.").

As additional support for their actual losses, Plaintiffs point to Exhibit N, which contains

a collection of invoices and bid registrations generated by Environmental Control Services for duct

cleaning and sealing work that Environmental Control Services was awarded and for which it was

paid. (*See* Pls. Opp. Ex. N, ECF 104, at pp. 8, 11, 15, 16, 17, 22–24). Plaintiffs contend that this

collection of invoices somehow evidences Plaintiffs' actual and concrete losses caused by Menta's

conduct. Plaintiffs are mistaken. The fact that Menta's companies were paid for the work reflected

in these invoices does not establish that this work, and the revenue generated therefrom, would

have gone to Plaintiffs in the absence of Menta's conduct. Missing from Plaintiffs' proffer is any

evidence that this work would have gone to Plaintiffs. Indeed, Brown acknowledged during his

deposition that he could not identify any work that Plaintiffs would have received but for Menta's

alleged wrongful conduct:

> Q:   What job would Environmental Construction have obtained
>      and what proof do you have that it would have obtained the
>      job?
>
> A:   What job? This is a—this is a—one of those questions like
>      if you weren't, you know, in Florida at the time, like, you

> know, how do you know that—if somebody was wearing a
> mask.  Like we were not getting the bid opportunities, so we
> couldn't bid on the jobs.  We don't know what jobs, because
> we never got the bid requests, Mr. Blanc.
>
> Q:    Of course, you cannot tell me with any certainty that there
>       was a job that you would have obtained, correct?
>
> A:    Mr. Blanc, I don't know what jobs we would have received
>       through that system.

(Brown Dep. Tr. 196:21–197:11).  In addition, Brown testified that Plaintiffs generally did not

perform duct cleaning and sealing work:

> A:    But the reason why we didn't do duct cleaning is because
>       it—there was enough subcontractors out there that did duct
>       cleaning, because Dominic [Menta]'s business did duct
>       cleaning, that we didn't want to step on Dominic's toes when
>       a job did have duct cleaning.  (*Id.* at 120:8–13).
>
>                                   ***
>
> Q:    Sir, I just want to be clear.  You just testified that if there was
>       a duct cleaning and sealing job, you would not act as a
>       passthrough so you would not have done it.  That's not
>       something you do, correct?
>
> A:    Correct.

(*Id.* at 224:19–226:23).  Notably, all of the work reflected in Exhibit N was duct cleaning and

sealing work.  In light of Brown's testimony, and the lack of any record evidence to substantiate

that the "diverted" work would have gone to Plaintiffs in the absence of Menta's conduct, Plaintiffs

have not met their summary judgment burden with respect to the proximate cause of any losses.

Accordingly summary judgment is granted in favor of Menta and against Plaintiffs on this claim.

### *Plaintiffs' Lanham Act Claims Against All Defendants (Count II)*

Defendants argue that Plaintiffs' claims against all Defendants under the Lanham Act, 15

U.S.C. § 1125, fail for the same reason discussed above—Defendants have failed to present

evidence sufficient to show that Defendants' conduct was the proximate cause of Plaintiffs' damages. This Court agrees.

To maintain a Lanham Act claim, a plaintiff must first demonstrate that: "(1) [the plaintiff] comes within 'the zone of interest' implicated by the statute; and, (2) that the Defendants' conduct proximately caused [the plaintiff's] damages." *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 611 (E.D. Pa. 2018) (citing *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014)). To meet these requirements, the plaintiff must present evidence sufficient to "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising . . . ." *Lexmark Intern., Inc.*, 572 U.S. at 133.

As with their RICO claims, Plaintiffs contend they suffered damages in the form of lost business and associated revenues that Defendants diverted to themselves. To support their economic injury, Plaintiffs again rely solely on Exhibit N. (*See* Pls. Opp., ECF 104, at pp. 21–23). This evidence, however, shows neither the existence of an injury to Plaintiffs nor that any such injury "flowed directly" from Defendants' conduct. At best, Exhibit N—a collection of invoices generated by Defendant Environmental Control Services—shows duct cleaning and sealing work performed and billed by Environmental Control Services. Missing is any evidence showing that this work would have gone to Plaintiffs, resulting in concomitant revenues, in the absence of Defendants' conduct. A Lanham Act plaintiff cannot meet its burden on damages and proximate cause by simply pointing to the invoices of the defendant. More is required. Accordingly, Defendants' motion for summary judgment as to Plaintiffs' Lanham Act claims is granted.

### Plaintiffs' Tortious Interference Claims Against All Defendants (Count IV)

At Count IV, Plaintiffs assert a claim for tortious interference with prospective business relations against all Defendants. To maintain a claim for tortious interference, a plaintiff must

present evidence sufficient to show:  "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damages resulting from the defendant's conduct."  *InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 627 (Pa. Super. Ct. 2006) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979)).  To meet the first element, the plaintiff must show a reasonable likelihood or probability of a contract. *Id.*  "This is ***an objective standard*** which of course ***must be supplied by adequate proof***."  *Id.* at 628 (emphasis in original) (citations omitted).

Plaintiffs identify the following three prospective contracts with which they contend Defendants wrongfully interfered:  (1) the Metropolitan Washington Airports Authority Project (the "MWAA Project"); (2) the Pennsylvania Convention Center Project (the "PCC Project"); and (3) the Montgomery County Courthouse Project.  Defendants argue that Plaintiffs have not presented evidence sufficient to meet the first element—a reasonable likelihood or probability of a contract.  This Court agrees.  Each of the purported contracts is addressed below.

To support their claim with respect to the MWAA Project, Plaintiffs point to two documents:  (1) a pre-bid conference sign-in sheet (Exhibit K); and (2) an April 19, 2019 letter addressed to Menta, as the President of Defendant Environmental Control Services, Inc., awarding the project to Defendant Environmental Control Services, Inc., (Exhibit M).  (Pls. Opp., ECF 104, at p. 24).  The sign-in sheet shows that Menta signed in as a representative of Plaintiff ECSI360 and Menta's brother is listed as a representative of Defendant Environmental Control Services. The award letter indicates that Defendant Environmental Control Services, Inc., was "the apparent successful bidder" and requests the submission of additional documentation.  Neither of these documents, however, provides any evidence with respect to the likelihood or probability of the

10

MWAA Project being awarded to Plaintiffs in the absence of Defendants' alleged conduct.  In addition, and as provided above, Brown was unable to identify any jobs that Plaintiffs would have obtained in the absence of Defendants' alleged conduct.  (*See* Brown Dep. Tr. 196:21–197:11).  At this stage of the proceedings, Plaintiffs must present some evidence and cannot rely on mere speculation.  Simply put, Plaintiffs have presented no evidence that they would have been awarded the MWAA Project.  In the absence of any such evidence, Plaintiffs have not met their summary judgment burden.  *See Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 141 (3d Cir. 2005) (affirming summary judgment where plaintiff provided "no evidence that [it] would be the winning bidder").  Accordingly, Defendants' motion for summary judgment is granted with respect to the MWAA Project.

To support their claim with respect to the PCC Project, Plaintiffs baldly contend that "the job was seemingly awarded based on a proposal originally provided on Limbach360 letterhead and based upon terms originally proposed by Limbach360 is compelling evidence that Plaintiffs would have obtained the contract but for Defendants' tortious conduct."  (Pls. Opp., ECF 104, at pp. 24–25).  As evidence, Plaintiffs point to documents showing that Menta submitted proposals for the project on behalf of both Plaintiff Limbach360, LLC, and Defendant Environmental Control Services (Exhibits J and Q), a collection of invoices submitted by Defendant Environmental Control Services for the project (Exhibit N), and the deposition testimony of Menta's wife (Exhibit Z).  (*Id.*).  At most, however, this proffered evidence shows that Menta submitted proposals for the PCC Project from both Plaintiff Limbach360 and Defendant Environmental Control Services and that the job was awarded to Defendant Environmental Control Services.  None of these documents, however, provides any evidence with respect to the likelihood or probability of the PCC Project being awarded to Plaintiff Limbach360 in the absence of

Defendants' alleged conduct.  In addition, and as provided above, Brown was unable to identify any jobs that Plaintiffs would have obtained in the absence of Menta's alleged conduct.  (*See* Brown Dep. Tr. 196:21–197:11).

Moreover, unrefuted evidence proffered by Defendants belies Plaintiffs' contention.  First, contrary to Plaintiffs' assertion, the Environmental Control Services bid was not "based upon terms originally proposed by Limbach360."  Through testimony unrefuted by Plaintiffs, Menta testified that he submitted the Limbach360 bid *after* submitting the Environmental Control Services bid.  Further, Menta submitted the Limbach360 bid *after* Siemens asked Menta if he could submit another bid with minority participation.  Menta advised Brown of the request and obtained Brown's approval to submit a Limbach360 bid that was "marked up" 15% to 20%.  In addition, contrary to Plaintiffs' bald contention, the two bids were not the same as they differed in at least one material respect: the price.  Defendant Environmental Control Services' bid was lower than that of Plaintiff Limbach360.

At this stage of the proceedings, Plaintiffs must present actual evidence to support its contention that it was deprived of prospective contracts that were reasonably likely to come to fruition.  Plaintiffs cannot rely on mere speculation.  Plaintiffs, however, have presented no evidence that they would have been awarded the PCC Project.  In the absence of any such evidence, Plaintiffs have not met their summary judgment burden. *See Santana*, 401 F.3d at 141 (affirming summary judgment where plaintiff provided "no evidence that [it] would be the winning bidder").  Accordingly, Defendants' motion for summary judgment is granted with respect to the PCC Project.

Plaintiffs' evidence with respect to the Montgomery County Project fares no better.  To support this tortious interference claim, Plaintiffs point to documents that merely show that Menta,

along with Brown, worked on and submitted a bid for the project on behalf of Plaintiff Element Mechanical Services LLC, and that Menta, on behalf of Defendant Environmental Control Services, submitted a bid to another bidder on the project as a subcontractor.  (*See* Pls. Opp., ECF 104, at p. 25).   While this evidence supports Plaintiffs' contention that Menta was submitting competing bids on behalf of separate entities,[5] it cannot satisfy Plaintiffs' summary judgment burden with respect to the likelihood or probability of Plaintiffs obtaining the Montgomery County Project in the absence of Defendants' conduct.   In the absence of any such evidence, Plaintiffs have not met their summary judgment burden.  *See Santana*, 401 F.3d at 141 (affirming summary judgment where plaintiff provided "no evidence that [it] would be the winning bidder").   Accordingly, Defendants' motion for summary judgment is granted with respect to the Montgomery County Project.

### *Defendants' Counterclaim/Third-Party Claims for Breach of Contract*

Defendants (as Counterclaim/Third-Party Plaintiffs) also seek summary judgment with respect to their breach of contract claims against Brown and ECSI360.  Each of these claims is premised upon one or more loans purportedly made by either Menta or Environmental Control Solutions to Brown and/or ECSI360.  To prove a breach of contract claim, a party must present evidence to show that:  "(1) both parties have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and, (3) there is mutuality of consideration."  *Redick v. Kraft, Inc.*, 745 F. Supp. 296, 300 (E.D. Pa. 1990).  To support their affirmative motion for summary judgment on these claims, Defendants

---

[5]     Notably, Plaintiffs present no evidence that Menta or any of his affiliated companies was precluded from bidding on projects without including ECSI360.    Indeed, Plaintiffs admit that "Menta and the companies which he alone owned and operated were not prohibited from bidding on all projects for which they alone were solicited or projects which fell within their particular areas of expertise without necessarily including ECSI360."  (Pls. Ans. to Third Am. Counterclaims, ECF 96, at ¶ 26).

rely on their pleadings and the testimony of Brown, in which he acknowledged the existence of these loans and the fact that the principal amounts had not yet been fully repaid.  Brown's testimony acknowledging the existence of these loans, however, falls far short of establishing the essential terms of these loans, including their maturity dates.  Further, Brown has refuted any purported default on these loans.  As such, Defendants' breach of contract claims premised on the purported loans are subject to genuine issues of material fact.  Accordingly, Defendants' motion is denied with respect to these claims.

**CONCLUSION**

The Court finds that Plaintiffs have failed to meet their summary judgment burden with respect to their RICO, Lanham Act, and tortious interference claims (Counts I, II, and IV), and, by agreement, Plaintiffs concede that they have not met their summary judgment burden of proof with respect to their claims under the Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act (Counts V and VI).  Therefore, Defendants' partial motion for summary judgment on these claims is granted.  In addition, this Court finds that genuine issues of material fact exist with respect to Defendants' counterclaim/third-party breach of contract claims.  As such, Defendants' motion is denied with respect to their breach of contract claims.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J.*