**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ENVIRONMENTAL CONSTRUCTION SERVICES, INC., ELEMENT MECHANICAL SERVICES LLC, LIMBACH360, LLC,<br>　　　　　　Plaintiffs<br>　　v.<br>DOMINIC MENTA, ENVIRONMENTAL CONTROL SERVICES, INC. AND ECSI II, INC.<br>　　　　　　Defendants<br>　　and<br>DOMINIC MENTA, ECSI II, INC. AND ENVIRONMENTAL CONTROL SOLUTIONS, INC.<br>　　　　　　Third-Party Plaintiffs<br>　　and<br>ENVIRONMENTAL CONSTRUCTION SERVICES, INC.<br>　　　　Derivative Third-Party Plaintiff<br>　　v.<br>MICHAEL A. BROWN, JENNIFER RILEY, LOUIS TIERNO, RAPTOR 360, LLC ENVIRONMENTAL CONSTRUCTION SERVICES, INC., AND ELEMENT MECHANICAL SERVICES, LLC<br>　　　　　　Third-Party Defendants. | CIVIL ACTION<br><br>NO. 2:19-cv-03477-NIQA |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

　　　　　　　　　　　　**COZEN O'CONNOR**

　　　　　BY:　　John K. McDonald, Esquire
　　　　　　　　Matthew M. Coin, Esquire
　　　　　　　　1650 Market Street, Suite 2800
　　　　　　　　Philadelphia, PA 19103
　　　　　　　　(215) 665-2000

　　　　　　　　*Attorneys for Plaintiffs/Counterclaim
　　　　　　　　Defendants/Third-Party Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION AND RELEVANT BACKGROUND ...................................................... 1

II.    ARGUMENT ................................................................................................................. 9

      A.     Menta Has Chosen Not to Honor the Settlement Agreement, Has Acted in Bad Faith, Has Misled the Court, Has Caused to Court to Expend Significant Judicial Resources, and His Actions Should be Sanctioned. .................................. 9

      B.     The Fees Sought By Plaintiffs Are Reasonable. .................................................... 14

            1.     Counsel's Hourly Rates Are Reasonable ................................................... 14

            2.     Counsel's Services Were Necessary And Appropriately Performed ........ 16

      C.     Plaintiffs Are Also Entitled To Full Reimbursement Of Their Attorneys' Fees And Costs Incurred Preparing And Filing The Instant Motion. .......................... 17

III.   CONCLUSION ............................................................................................................ 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1st Westco Corp. v. Sch. Dist. of Philadelphia*,
No. 91-2727, 1994 WL 18632 (E.D. Pa. Jan. 13, 1994)..........................................................14

*Angelico v. Lehigh Valley Hosp., Inc.*,
No. 96-2861, 1996 WL 524112 (E.D. Pa. Sept. 13, 1996), *aff'd*, 184 F.3d 268
(3d Cir. 1999)............................................................................................................................13

*Antoniak v. Armstrong*,
No. 18-1263, 2020 WL 2539194 (E.D. Pa. May 19, 2020)...........................................9, 10, 13

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*,
MDL No. 1871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012)..................................................15

*Benson v. Giant Food Stores, LLC*,
2011 WL 6747421 (E.D. Pa. Dec. 22, 2011).............................................................................4

*Blum v. Stenson*,
465 U.S. 886 (1984)..................................................................................................................14

*BTG Int'l Inc. v. Bioactive Laboratories*,
2016 WL 3519712 (E.D. Pa. June 28, 2016) .............................................................................5

*Maria C. ex rel. Camacho v. Sch. Dist. of Philadelphia*,
142 F. App'x 78 (3d Cir. 2005) ...............................................................................................17

*Campbell v. Pennsylvania Sch. Boards Ass'n*,
No. 18-892, 2018 WL 6727821 (E.D. Pa. Dec. 21, 2018).......................................................13

*DAS Architects, Inc. v. Rahn*,
No. 20-1276, 2021 WL 1424688 (E.D. Pa. Apr. 15, 2021)......................................................17

*Dee v. Borough of Dunmore*,
548 F. App'x 58 (3d Cir. 2013) ...............................................................................................14

*Durango v. Cohen*,
No. 11-00152, 2013 WL 12328881 (D.N.M. Sept. 16. 2013)..................................................11

*Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*,
57 F.3d 1215 (3d Cir. 1995).......................................................................................................9

*Fiore Indus., Inc. v. Ericsson*,
No. 18-1218, 2021 WL 5095992 (D.N.M. Sept. 3, 2021)........................................................11

*Focht v. Nationstar Mortg., LLC*,
    No. 18-151, 2020 WL 5017643 (W.D. Pa. Aug. 25, 2020) ....................................................10

*Forba v. Thomas Jefferson Univ. Hosp.*,
    No. 15-1722, 2016 WL 3661760 (E.D. Pa. July 8, 2016), *aff'd*, 666 F. App'x
    106 (3d Cir. 2016)..................................................................................................................11

*Gerszten v. Univ. of Pittsburgh Cancer Inst. Cancer Ctrs.*,
    Civil Action No. 08-1280, 2009 WL 4639335 (W.D. Pa. Dec. 7, 2009) ...............................16

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017)...............................................................................................................10

*Gov't Emps. Ins. Co. v. Nealey*,
    262 F. Supp. 3d 153 (E.D. Pa. 2017) .....................................................................................13

*Harper v. Nevada Prop. 1, LLC*,
    552 F. Supp. 3d 1033 (D. Nev. 2021) ....................................................................................11

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...............................................................................................................16

*Herman v. City of Allentown*,
    985 F. Supp. 569 (E.D. Pa.1997) .............................................................................................4

*Joan P.B. v. Khepera Charter Sch.*,
    420 F. Supp. 3d 347 (E.D. Pa. 2019) ...............................................................................14, 17

*Joe Hand Promotions, Inc. v. Tickle*,
    No. 12-01874, 2016 WL 393797 (M.D. Pa. Feb. 2, 2016) .....................................................11

*Keister v. PPL Corp.*,
    318 F.R.D. 247 (M.D. Pa. 2015)............................................................................................12

*Musa v. Soar Corp.*,
    No. 13-2847, 2015 WL 619615 (E.D. Pa. Feb. 12, 2015) .................................................14, 16

*Onal v. PB Amoco Corp.*,
    134 F. App'x 515 (3d Cir. 2005) ..............................................................................................4

*Pennsylvania Gen. Energy Co., LLC v. Grant Twp.*,
    No. 14-209, 2018 WL 306679 (W.D. Pa. Jan. 5, 2018) .........................................................13

*Pletcher v. Giant Eagle, Inc.*,
    No. 20-754, 2021 WL 6061666 (W.D. Pa. Nov. 8, 2021) ......................................................13

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990).............................................................................................13, 14

*Schwartz v. Hosp. of Univ. of Pennsylvania*,
  No. 88-4865, 1989 WL 64286 (E.D. Pa. June 13, 1989) ......................................................11

*Shanea S. v. Sch. Dist. of Philadelphia*,
  No. 12-1056, 2014 WL 2586940 (E.D. Pa. June 10, 2014) ..................................................16

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*,
  195 F. App'x. 93 (3d Cir. 2006) .........................................................................................16

*Transp. Int'l Pool, Inc. v. Alternative Transp., Inc.*,
  No. 07-2895, 2008 WL 2550598 (E.D. Pa. June 25, 2008) ..................................................11

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
  886 F. Supp. 445 (E.D. Pa. 1995) .......................................................................................14

*Washington v. Philadelphia Cnty. Ct. of Common Pleas*,
  89 F.3d 1031 (3d Cir. 1996) ...............................................................................................16

*Wise v. Washington Cnty.*,
  No. 10-1677, 2015 WL 1757730 (W.D. Pa. Apr. 17, 2015) ................................................10

*Zurich Am. Life Ins. Co. v. Nagel*,
  538 F. Supp. 3d 396 (S.D.N.Y. 2021) ...................................................................................4

**Other Authorities**

Fed. R. Evid. 11 .....................................................................................................................9

Fed. R. Evid. 408 .................................................................................................................4, 5

Fed. R. Evid. 408(a) ...............................................................................................................4

Plaintiffs/Counterclaim Defendants/Third-Party Defendants Environmental Construction Services, Inc. ("ECSI360" or the "Company"), Element Mechanical Services, LLC, Limbach360, LLC, Michael Brown, Louis Tierno, Jennifer Riley, and Raptor 360, LLC (collectively, "Plaintiffs"), through undersigned counsel, hereby file this Memorandum of Law in support of their Motion for Attorneys' Fees and Costs.

## I.    INTRODUCTION AND RELEVANT BACKGROUND[1]

This Court possesses the inherent authority to sanction parties that have acted in bad faith, misled the Court, or have maliciously attempted to thwart the enforcement of settlement agreements. This authority includes the ability to order the party acting in bad faith to reimburse the legal fees and costs incurred by the opposing party. Such a sanction is warranted here. This case settled over eight months ago. The Plaintiffs fulfilled all of their responsibilities under the parties' settlement agreement, and yet Dominic Menta ("Menta") and his new counsel, Gary Lightman, Esq. ("Lightman"), have engaged in a campaign to attempt to extort more money from Brown and ECSI360.[2] In so doing, Menta and Lightman have besieged the Court with meritless filings and made false statements to the Court. As a result, the Court will have to expend significant resources to resolve all of these unnecessary filings. The Court can and should order Menta to reimburse Plaintiffs for the substantial legal fees they have incurred as a direct result of Menta's bad faith conduct.

As this Court is well aware, this dispute between two former business partners was resolved with a Court-approved settlement agreement (the "Settlement Agreement") on December 29, 2022.

---

[1] To avoid repetition, Plaintiffs incorporate by reference the detailed factual background set forth in Section II of their Reply in Further Support of their Motion to Enforce the Court-Approved Settlement Agreement and Opposition to Defendant's Cross-Motion. [ECF No. 220 at 7-18.]

[2] Menta is currently represented by Gary Lightman, Esq. of Lightman & Manochi. The Court permitted Menta's former counsel, Anthony R. Twardowski, Esq. and Andrew J. DeLuca, Esq., of Zarwin Baum DeVito Kaplan Schaer Toddy, P.C. ("Zarwin Baum") to withdraw on June 20, 2023. [ECF No. 214.]

*See* Settlement Agreement, attached hereto as Exhibit 1; Escrow Agreement, attached hereto as

Exhibit 2. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████[3,4] For over five months, Plaintiff Michael Brown worked tirelessly

to timely fulfill his obligations under the Settlement Agreement. ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████[5,6]

---

[3] ████████████████████████████████████████████████████████████████
████████████████

[4] ████████████████████████████████████████████
████████████████████████████████

[5] ████████████████████████████████████████████████████████████████
███████████████████████████████████████████

[6] ████████████████████████████████████████████████████████████████
████████████

As set forth in detail in Plaintiffs' previous filings, Brown fully and timely complied with his obligations under the Settlement Agreement. [*See* ECF Nos. 213, 220, 225];[7] ███████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████ Thus, as of the June 13, 2023 deadline, Brown had fulfilled all of his obligations under the Settlement Agreement and each side had received the full benefit of their bargain.

That should have been the end of this matter for this Court. And the end of both sides bleeding legal fees and costs associated with this protracted and bitter partnership dispute. But it was not. ███████████████████████████████████████

█████████████████████ Menta was not quite ready to walk away from the fight. ███████

███████████████████████████████████████████

█████████████████████████████████[8] ██████████████████

---

[7] Plaintiffs' docket citations refer to the unredacted and sealed versions of these filings where relevant.

[8] The Court may decide that it requires an evidentiary hearing to make threshold determinations of fact in order to reach a ruling on the pending Motion to Enforce the Settlement.  If so, Plaintiffs will call ████████████████ and Menta's prior counsel who will testify to these facts.

 Indeed, after Brown fulfilled all of his obligations under the Settlement Agreement on June 13, 2023, Menta and his former counsel went *completely* silent,

Having heard nothing from Menta or his counsel, Plaintiffs filed their Motion to Enforce the Settlement Agreement on June 16, 2023. [ECF No. 213].

A few days later, on June 19, 2023, Plaintiffs learned that Menta had fired his counsel, Anthony Twardowski of Zarwin Baum, and sued the firm for malpractice. Zarwin Baum, in turn, sued Menta for breach of contract and unjust enrichment over his alleged failure to pay over $160,000 in legal fees. Menta, , hired attorney Lightman to extort an even better "deal" from Menta's former partner.[9]

And Lightman wasted no time in executing his new client's plan to extort Brown and ECSI360. Lightman began by claiming that Plaintiffs had breached the Settlement Agreement and bombarded the undersigned with demands for payment in exchange for "peace." Lightman couched his extortionate demands as "settlement negotiations" in an effort to get more money from Brown in return for a promise not to challenge the settlement.[10] Of course, notwithstanding

---

[9] At an evidentiary hearing, Plaintiffs will call Mr. Twardowski to provide testimony on these actions and the dueling lawsuit.

[10] Federal Rule of Evidence 408 "does not provide a blanket protection against any and all use of statements made during settlement negotiations." *Benson v. Giant Food Stores, LLC,* 2011 WL 6747421, at *6 (E.D. Pa. Dec. 22, 2011). Instead, as expressly recognized in the commentary to Rule 408, the Rule "bars compromise evidence *only* when offered as evidence of the 'validity', 'invalidity', or 'amount' of the disputed claim." F.R.E. 408 advisory committee notes (2006) (emphasis added) (citations omitted); *see also* Fed. R. Evid. 408(a); *Herman v. City of Allentown,* 985 F. Supp. 569, 577 (E.D. Pa.1997) ("Rule 408 only excludes evidence of settlement offers when that evidence is offered to prove the liability for or invalidity of the claim under negotiation.") (citation omitted). Indeed, "the settlement zone is not a black hole from which no evidence can escape." *Zurich Am. Life Ins. Co. v. Nagel,* 538 F. Supp. 3d 396, 401 (S.D.N.Y. 2021). "Rule 408 is inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions. *Id.* (quoting *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.,* 111 F.3d 1284, 1293 (6th Cir. 1997) (internal quotation marks omitted)). "[W]rongful acts are not shielded because they took place during

Lightman's claims to the contrary, Plaintiffs were not engaged in settlement discussions with Menta. This case was already settled -- more than six months before on December 29, 2022 -- and Brown had fully complied with the terms of the Settlement Agreement. The matter should have been over; however, Menta, emboldened by his new lawyer, was not deterred. Lightman, on Menta's behalf, made multiple demands for more money for his client in return for his agreement to not oppose Plaintiff's Motion to Enforce the Settlement Agreement, including demands of $100,000, $150,000, and $200,000. *See* Affidavit of John K. McDonald, attached hereto as Exhibit 11.

When Plaintiffs refused to acquiesce to Menta's threats, Defendants filed papers opposing Plaintiffs' efforts to enforce the Settlement Agreement and cross-moving the Court ██████ ████████████████████████████████████████████████████████████████████ [*See* ECF No. 216] ("Menta's Cross-Motion"). Menta's Cross-Motion, which deliberately ignores and misconstrues critical provisions of the Settlement Agreement and the related Escrow Agreement, attempts to frame Menta's demand for more money from his former partner as "enforcement" of the Settlement Agreement. Plainly, it was nothing of the kind.

Incredibly, Menta's bad faith Cross-Motion was based on two false premises. First, he argued that Plaintiffs had not timely complied with their obligations under the Settlement Agreement ██████████████████████████████. ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

---

compromise negotiations." *Id.* Courts in the Third Circuit are in accord. *See, e.g., Onal v. PB Amoco Corp.*, 134 F. App'x 515, 518 (3d Cir. 2005) (explaining that "Rule 408 only precludes the introduction of evidence of compromise to establish liability *as to the claim purportedly compromised*," and affirming district court's admission of evidence "in assessing [defendant's] counterclaim that [plaintiff] breached his duty of good faith and fair dealing") (emphasis added). Courts in the Eastern District have explained that Rule 408 does not allow a party to "insulate itself" by "labeling as settlement discussions its purportedly improper and possibly illegal demands." *BTG Int'l Inc. v. Bioactive Laboratories,* 2016 WL 3519712, at *10 (E.D. Pa. June 28, 2016).

███████████████████████████████████████████████████. In their Reply in Further

Support of Their Motion to Enforce Court Approved Settlement Agreement and Opposition to

Defendant Menta's Cross-Motion [*see* ECF 220 at 18-25], ████████████████████████

██████████████████████████████████████.

Second, and even more brazenly, Menta claimed that he was entitled to his extortion

ransom because, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See* Exhibit 9. Menta,

of course, never apprised the Court of this fact and has doubled down on his false statement in

subsequent filings. Not surprisingly, Menta has not supported his patently false claims with a

supporting affidavit or sworn declaration of any kind.

Faced with these false claims, Plaintiffs were compelled to respond. [*See* ECF No. 220].

In support, Michael Brown executed a detailed and comprehensive affidavit, outlining every step

he and the Company took to timely comply with the Settlement Agreement. *See* Exhibit 3. Menta,

in turn, filed another meritless filing in which he again falsely claimed that ██████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████ [*See* Menta's Reply, ECF No. 221 ¶ 20]. ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ [*See* ECF No. 217 at 16-17,

25-26]; *see also* Exhibits 8, 9. Menta's filings were frivolous, unsupported, and plainly presented

to the Court for the improper purpose of harassing Plaintiffs and needlessly increasing Plaintiffs'

costs. This conduct is sanctionable.

But once again, that is not the end of the story. During the period when he was attempting

to extort Plaintiffs through his multiple frivolous filings, ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

*See* August 4, 2023 Email from G. Lightman, attached hereto as Exhibit 10 (emphasis added).

This most recent email from attorney Lightman is both astounding and revealing. ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ There can be no more

compelling example of bad faith conduct.

This conclusively establishes that when Menta filed his Cross-Motion and Reply—███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███ Menta knew. His prior counsel knew. Lightman knew. And yet they all deliberately

concealed this information from the Court.[11] Given what we now know, there can be no innocent

explanation for this conduct. ██████████████████████████████████

██████████████ to frustrate Plaintiffs' efforts to comply with the Settlement Agreement

and to mislead the Court in the hope they might be awarded a windfall.

As a result of Menta and his counsel's bad faith conduct, Plaintiffs seek reimbursement of

the following reasonable attorneys' fees incurred in connection with the various motions Plaintiffs

had to both file and respond to after they had already met the conditions of the Settlement

Agreement:

| **Attorney** | **Title** | **Years' Experience** | **Rate** | **Hours Worked** | **Total Fees Incurred** |
|---|---|---|---|---|---|
| John McDonald | Shareholder | 33 | ███ | ███ | ███ |
| Matthew Coin | Associate | 7 | ███ | ███ | ███ |
| Daniel Brobst | Associate | 4 | ███ | ███ | ███ |
| | | | **TOTAL** | **83.8 hours** | **$ 51,890.50** |

---

[11] This, of course, explains why none of Menta's post-settlement filings were accompanied with an affidavit or sworn declaration.

*See* Exhibit 11. Plaintiffs also seek reimbursement of the reasonable attorneys' fees and costs incurred preparing the instant Motion:

| Attorney | Title | Years' Experience | Rate | Hours Worked | Total Fees Incurred |
|---|---|---|---|---|---|
| John McDonald | Shareholder | 33 | ██████ | ██████ | ██████ |
| Matthew Coin | Associate | 7 | ██████ | ██████ | ██████ |
| Daniel Brobst | Associate | 4 | ██████ | ██████ | ██████ |
| | | | **TOTAL** | **63.5 hours** | **$ 32,699.00** |

*Id.* Finally, Plaintiffs seek reimbursement of $869.00 of associated costs. *Id.*

Menta has abused the judicial process through his attempt to extort additional money from Brown. His needless and self-serving filings, his misrepresentations and continued lack of candor have caused, and will continue to cause, this Court to expend significant judicial resources. His actions warrant the imposition of sanctions. Accordingly, the Court should grant Plaintiffs' Motion and award Plaintiffs the fees and costs they incurred preparing and filing Plaintiffs' Motion to Enforce Settlement Agreement (ECF No. 213), Plaintiffs' Opposition to Menta's Cross-Motion (ECF No. 220), Plaintiffs' Response to Menta's Reply (ECF No. 225), and the instant Motion for Sanctions.

## II.   ARGUMENT

### A.   Menta Has Chosen Not to Honor the Settlement Agreement, Has Acted in Bad Faith, Has Misled the Court, Has Caused to Court to Expend Significant Judicial Resources, and His Actions Should be Sanctioned.[12]

"Federal courts have inherent power to sanction a party when it has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' or where 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Antoniak v. Armstrong*, No. 18-1263, 2020 WL

---

[12] "[T]he advent of Rule 11 and the other statutory sanctions did not eviscerate the courts' inherent power to sanction." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995). The Third Circuit has even "rejected the proposition that once a claim is held not to violate Rule 11, the court is prevented from imposing sanctions under its inherent power." *Id.* (citation and internal quotation marks omitted).

2539194, at *6 (E.D. Pa. May 19, 2020) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). "That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citation and internal quotation marks omitted). "[O]ne permissible sanction is an assessment of attorney's fees—an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side. *Id.* "Such a sanction must be compensatory, rather than punitive." *Antoniak*, 2020 WL 2539194, at *6. "In other words, the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear Tire*, 581 U.S. at 108 (citation and internal quotation marks omitted).

"A comprehensive definition of 'bad faith' or conduct 'tantamount to bad faith' is not possible, but the type of conduct at issue includes a broad range of willful improper conduct." *Wise v. Washington Cnty.*, No. 10-1677, 2015 WL 1757730, at *12 (W.D. Pa. Apr. 17, 2015) (citing *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)). "[R]eckless misstatements of law and fact, when coupled with an improper purpose can establish bad faith." *Wise*, 2015 WL 1757730, at *12 (internal quotation marks omitted) (citing *Fink*, 239 F.3d at 992). "It is of particular importance to note that it is 'permissible to infer bad faith from [a party's] action[s] plus the surrounding circumstances.'" *Id.* (quoting *Miller v. City of Los Angeles,* 661 F.3d 1024, 1029 (9th Cir. 2011) (alterations in original). When determining whether a party acted in bad faith, "[t]he Court must take into account the severity of the wrongdoing, and whether the wrongdoing prejudices the opposing party or hinders the administration of justice, as well as any mitigating factors." *Focht v. Nationstar Mortg., LLC*, No. 18-151, 2020 WL 5017643, at *14 (W.D. Pa. Aug. 25, 2020) (citation omitted).

In the context of settlement agreements, Courts within this District have cautioned that "[w]e cannot allow parties to reach settlement agreements and then change their mind with buyer's remorse." *Forba v. Thomas Jefferson Univ. Hosp.*, No. 15-1722, 2016 WL 3661760, at *4 (E.D. Pa. July 8, 2016), *aff'd*, 666 F. App'x 106 (3d Cir. 2016); *see also Transp. Int'l Pool, Inc. v. Alternative Transp., Inc.*, No. 07-2895, 2008 WL 2550598, at *5 (E.D. Pa. June 25, 2008). For that reason, parties have "acted in bad faith . . . in failing to honor the settlement agreements entered into with the [opposing party] and in opposing the motions . . . to enforce the settlement agreements." *Schwartz v. Hosp. of Univ. of Pennsylvania*, No. 88-4865, 1989 WL 64286, at *6 (E.D. Pa. June 13, 1989) (finding the plaintiff and plaintiff's counsel had acted in bad faith and were jointly and severally liable for defendants legal fees and costs); *Fiore Indus., Inc. v. Ericsson*, No. 18-1218, 2021 WL 5095992, at *5 (D.N.M. Sept. 3, 2021) ("[b]ad faith can be premised upon a party's thwarting of a settlement agreement due to 'buyer's remorse,' over the terms . . . ."); *see also Joe Hand Promotions, Inc. v. Tickle*, No. 12-01874, 2016 WL 393797, at *10 (M.D. Pa. Feb. 2, 2016) (awarding sanctions where the defendant entered into a settlement agreement, subsequently "refused to comply with the terms of the parties' settlement agreement" and "informed the Court that he was unable to comply with the settlement agreement and that he would like to 'have his day in court' before the case was disposed of," noting that "[i]n addition to the extra cost imposed upon Plaintiff as a result of Defendant's refusal to comply with the terms of the settlement agreement, the Court and the public were also forced to incur significant expense of time and resources as a result of the re-opening of this largely run-of-the-mill piracy action"); *Durango v. Cohen*, No. 11-00152, 2013 WL 12328881, at *4 (D.N.M. Sept. 16. 2013) (adopting recommendation, granting motion to enforce settlement agreement and applying the court's inherent power to assess sanctions of reasonable attorneys' fees and costs against a party

attempting in bad faith to thwart the enforcement of a settlement agreement); *Harper v. Nevada Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1046 (D. Nev. 2021) ("[a]ttempts to renege on a valid settlement agreement lend themselves" to a finding of bad faith and the imposition of sanctions under the court's inherent authority). Additionally, Courts in Pennsylvania have awarded sanctions where the court determined "it has become patently clear that the purpose of this litigation was to extort a settlement from Defendants on meritless facts and to otherwise run up the cost of litigation for opposing counsel." *Keister v. PPL Corp.*, 318 F.R.D. 247, 269 (M.D. Pa. 2015).

Here, Menta and Lightman acted in bad faith, and this bad faith conduct merits the award of sanctions. ███████████████████████████████████████████ █████████████████████████████████████, Menta and his counsel attempted to extort more money from his former business partner. After their extortion was unsuccessful, they filed Menta's Cross-Motion and Reply, deliberately ignoring and distorting critical provisions of the Settlement Agreement, █████████████████████████████████████ █████████████████████ and shamelessly framed Menta's bad faith demand for an unwarranted windfall as "enforcement" of the Settlement Agreement.

Menta deliberately attempted to mislead the Court in his Cross-Motion and Reply. Without providing the Court with any other context or details, █████████████████████████ █████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████.

"Where there is a 'pattern of wrongdoing' or a 'wrongdoing that actually prejudices the wrongdoer's opponent,' the need for stronger and more severe inherent sanctions." *Republic of Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 174 (E.D. Pa. 2017) (quoting *Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994)). Menta's sustained pattern of conduct warrants a finding of bad faith and the imposition of sanctions. Accordingly, the Court should grant Plaintiffs' Motion for Sanctions. *See Campbell v. Pennsylvania Sch. Boards Ass'n*, No. 18-892, 2018 WL 6727821, at *9 (E.D. Pa. Dec. 21, 2018) (granting motion for sanctions against opposing counsel where "[t]he Court concludes that, given the number of unprofessional communications by Cohn, reprimand and an award of defendants attorneys' fees and costs is the 'minimum that will serve to adequately deter' [opposing counsel]."); *Antoniak*, 2020 WL 2539194, at *9 (awarding fees where defendant had "acted vexatiously and in bad faith toward [plaintiff] throughout the history of this lawsuit"); *Angelico v. Lehigh Valley Hosp., Inc.*, No. 96-2861, 1996 WL 524112, at *4 (E.D. Pa. Sept. 13, 1996), *aff'd*, 184 F.3d 268 (3d Cir. 1999) (awarding sanctions where the court found the offending party's brief "demonstrates an inappropriately cavalier attitude toward his obligations to the Court and to opposing parties to assure that his pleadings and briefs are accurate and not misleading"); *Pennsylvania Gen. Energy Co., LLC v. Grant Twp.*, No. 14-209, 2018 WL 306679, at *12 (W.D. Pa. Jan. 5, 2018) (awarding $52,000 in fees and costs where the court found "that Attorneys Linzey and Dunne have acted in bad faith with regard to the pursuit of frivolous legal claims and defenses. Such conduct has resulted in the expenditure of significant litigant and judicial resources, and warrants the imposition of sanctions . . ."); *Pletcher v. Giant Eagle, Inc.*, No. 20-754, 2021 WL 6061666, at *7 (W.D. Pa. Nov. 8, 2021), *report and recommendation adopted*, No. 20-754, 2021 WL 6061715 (W.D. Pa. Nov. 16, 2021).

**B.      The Fees Sought By Plaintiffs Are Reasonable.**

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed." *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Joan P.B. v. Khepera Charter Sch.*, 420 F. Supp. 3d 347, 353 (E.D. Pa. 2019) (quotation omitted). "Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar, which is presumed to be the reasonable fee." *Id.* (citation omitted) (internal quotation marks omitted). "Courts apply a burden-shifting analysis to calculate the lodestar." *Dee v. Borough of Dunmore*, 548 F. App'x 58, 60 (3d Cir. 2013). Once the petitioner produces evidence that the hours spent and rates charged are reasonable, "the burden shifts to the respondent to challenge the attorney[s'] hours, hourly rate, and the reasonableness of the product of those numbers." *Id.* (citation omitted).

1.      Counsel's Hourly Rates Are Reasonable

"A reasonable hourly rate is '[g]enerally . . . calculated according to the prevailing market rates in the relevant community,' taking into account 'the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Musa v. Soar Corp.*, No. 13-2847, 2015 WL 619615, at *2 (E.D. Pa. Feb. 12, 2015) (quoting *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir. 2001)) (alterations in original); *see also Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).

"The 'starting point' in determining the appropriate hourly rate is the attorneys' usual billing rate." *Joan P.B. v. Khepera Charter Sch.*, 420 F. Supp. 3d 347, 353 (E.D. Pa. 2019). "A

customary billing rate is an acceptable approximation of a reasonable rate in normal circumstances." *1st Westco Corp. v. Sch. Dist. of Philadelphia*, No. 91-2727, 1994 WL 18632, at *3 (E.D. Pa. Jan. 13, 1994) ; *see also In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 477 (E.D. Pa. 1995). Plaintiffs were charged the following hourly rates for Cozen's work enforcing the Settlement Agreement and opposing Menta's meritless filings:

| **Attorney** | **Title** | **Years' Experience** | **Rate** |
|---|---|---|---|
| John McDonald | Shareholder | 33 | ███████ |
| Matthew Coin | Associate | 7 | ███████ |
| Daniel Brobst | Associate | 4 | ███████ |

*See* Exhibit 11.

Cozen O'Connor's rates are well within the range charged by similar large firms in the Philadelphia market for attorneys with similar skill, experience, and reputation. *See, e.g.*, *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 1871, 2012 WL 6923367, at *10 (E.D. Pa. Oct. 19, 2012) ("... partners at GSK's Philadelphia-based firm (Pepper Hamilton) bill up to $825 per hour, and partners at other Philadelphia law firms have similar top hourly rates ($900 at Cozen O'Connor, $875 at Duane Morris, $750 at Saul Ewing, and $725 at Fox Rothschild)"). Plaintiffs respectfully submit that Cozen's rates are sufficiently in line with the normal and customary rates and do not warrant any adjustment. ███████



2.    Counsel's Services Were Necessary And Appropriately Performed

"In calculating the second part of the lodestar determination, the time reasonably expended, a district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Musa*, 2015 WL 619615, at *3 (internal quotation marks omitted) (citing *Pa. Envtl. Def. Found., v. Canon–McMillan School Dist.*, 152 F.3d 228, 232 (3d Cir. 1998)). The number of hours worked and the hourly fee charged "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Compensable time includes time dedicated to drafting motions and briefs, "legal research, attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail, and travel." *Shanea S. v. Sch. Dist. of Philadelphia*, No. 12-1056, 2014 WL 2586940, at *5 (E.D. Pa. June 10, 2014); *see also Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x. 93, 99 (3d Cir. 2006) (finding nothing unreasonable about approximately one hundred forty (140) hours that attorneys spent collectively on meetings and conference calls); *Gerszten v. Univ. of Pittsburgh Cancer Inst. Cancer Ctrs*., Civil Action No. 08-1280, 2009 WL 4639335, at *5 (W.D. Pa. Dec. 7, 2009) ("several attorneys participat[ing] in strategy meetings and discussions is reasonable" and therefore compensable).

"A fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) (internal quotation marks and citation omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "For example, a fee petition with the phrase 'miscellaneous research, telephone conversations, and conferences concerning facts,

evidence, and witnesses: 1.3 hours' contains adequate specificity." *Musa*, 2015 WL 619615, at \*4 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1191 n.13 (3d Cir. 1990)).

Here, 83.8 hours is a reasonable amount of time incurred to (1) prepare and file Plaintiffs' Motion to Enforce Settlement Agreement (ECF No. 213), (2) preparing Plaintiffs' opposition to Menta's Cross-Motion (ECF No. 220), (3) preparing Plaintiffs' Reply (ECF No. 225), and, (4) generally, responding to Menta's extortionate threats. Cozen staffed this matter efficiently. Prior to billing, Cozen shareholder John McDonald reviewed invoices to ensure that all billing entries on this matter were appropriate before submitting an invoice to Plaintiffs. *See* Exhibit 10. In calculating the total compensable fees, Cozen again audited its invoices to ensure Plaintiffs were not asking the Court for any excessive, redundant, or unnecessary fees. *Id.* Accordingly, Plaintiffs' fee application is appropriately tailored to encompass only the fees and costs incurred enforcing the Settlement Agreement and opposing Menta's extortion attempts. These fees were reasonable and necessary under the circumstances. Therefore, Plaintiffs' Motion should be granted and Plaintiffs should be awarded $51,890.50 in fees.

### C.     Plaintiffs Are Also Entitled To Full Reimbursement Of Their Attorneys' Fees And Costs Incurred Preparing And Filing The Instant Motion.

Plaintiffs should also be reimbursed for the time Cozen spent preparing and filing the instant Motion. Courts throughout this District and Circuit have routinely found that this time is compensable. *See Maria C. ex rel. Camacho v. Sch. Dist. of Philadelphia*, 142 F. App'x 78, 82 (3d Cir. 2005) ("It is firmly settled that the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award.") (citation omitted) (internal quotation omitted); *DAS Architects, Inc. v. Rahn*, No. 20-1276, 2021 WL 1424688, at \*12 (E.D. Pa. Apr. 15, 2021) (awarding fees incurred in connection with preparation

and filing of motion and reply brief). "[L]ike time spent on any other aspect of litigation, time spent on a fee petition must be reasonable to be recoverable." *Joan P.B.*, 420 F. Supp. 3d at 355.

The time Cozen O'Connor spent preparing the instant Motion was reasonable. Three Cozen O'Connor attorneys—Daniel Brobst, Matthew Coin, and John McDonald—collectively drafted and prepared the present Motion. Counsel also conducted legal research regarding the Court's inherent authority to sanction bad faith conduct. The Motion was researched and drafted efficiently. Mr. Brobst, who handled the research and drafted a portion of the Motion, ████████ ████████. Mr. Coin ████████████ in preparing the Motion. Finally, Mr. McDonald who oversaw the work of Mr. Brobst and Mr. Coin and reviewed and revised the Motion, ████████ ████. Given the nature of the issues before the Court, these billing entries were reasonable.

Accordingly, Plaintiffs submit that they are entitled to $32,699.00 in attorneys' fees related to preparing and drafting this Motion.

## III.   CONCLUSION

In furtherance of their plan to try to extort an even better settlement outcome for Menta, he and his new counsel have made false statements and representations to the Court in their various Court filings. Despite having already fulfilled all conditions of the Settlement Agreement, Plaintiffs had to respond to protect themselves and pursue the rightful enforcement of the underlying Settlement Agreement. None of the ensuing legal expenses should have been incurred. All of this was manufactured by Menta and his new counsel for a clearly improper purpose. Accordingly, the Court should grant Plaintiffs' Motion and order Menta to reimburse Brown $84,589.50 for the substantial legal fees he has incurred as a result of Menta's bad faith conduct.

Respectfully submitted,

**COZEN O'CONNOR**

Dated: August 28, 2023          BY:      /s/ John K. McDonald_____

                                        John K. McDonald, Esquire
                                        Matthew M. Coin, Esquire
                                        1650 Market Street, Suite 2800
                                        Philadelphia, PA  19103
                                        jmcdonald@cozen.com
                                        mcoin@cozen.com

                                        *Attorneys for Plaintiffs/Counterclaim*
                                        *Defendants/Third-Party Defendants*